# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 25-mj-628
Records and information associated with the cellular )
device assigned call number 832-392-7284 ("the )
Target Cell Phone"), further described in Attachment A )

CLERK'S OFFICE
A TRUE COPY
Nov 20, 2025
/s/ KyleFrederickson
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) | Distribution of a Controlled Substance, Possession with the Intent to Distribute a Controlled Substance |
| Title 18 U.S.C. § 2(a) | Aiding and Abetting |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of  30  days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Brandon Radke**  Digitally signed by Brandon Radke
Date: 2025.11.20 10:57:03 -06'00'

*Applicant's signature*

Brandon Radke, USMS TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 11/20/2025

*Tiffany Woelfel*
*Judge's signature*

City and state: Green Bay, Wisconsin    Honorable Tiffany E. Woelfel, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, U.S Marshal Task Force Officer (USMS TFO) Brandon Radke with the Eastern Wisconsin Violent Offender Task Force (EWVOTF), being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number 832-392-7284, (the "Target Cell Phone"), whose service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3. I am employed with the Manitowoc County Sheriff's Office since February 2013 and currently assigned as a Detective with the Manitowoc County Sheriff's Office. I have been a full-time sworn law enforcement officer for over 12 years; I am currently assigned as a Task Force Officer (TFO) with the US Marshals Service Eastern Wisconsin Violent Offender Task

Force (EWVOTF).

4. My duties with the fugitive task force is to locate and arrest fugitives from justice wanted on outstanding felony warrants. As part of my duties with the fugitive task force, I am trained in the law enforcement telecommunications field.

5. I am conducting a fugitive investigation of the offense(s) of a federal warrant in violations of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B) and Title 18, United States Code, Section 2(a), based upon a sealed Grand Jury indictment on October 21, 2025. The indictment was brought by the United States District Court Eastern District of Wisconsin. In the course of this investigation, it became apparent that identifying and locating a cellular telephone, assigned phone number 832-392-7284 will be useful to investigators. The fugitive in this investigation with whom the phone belongs to is identified as Stacy L. Culbert dob: 03/26/1969.

6. The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Stacy Culbert has violated 21 U.S.C. 841(a)(1), 841(b)(1)(B) and Title 18 U.S.C Section 2(a) based upon the Grand Jury indictment. CULBERT is the subject of an arrest warrant issued on October 21, 2025, based upon that indictment. There is also probable cause to believe that CULBERT is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting CULBERT, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. The court has jurisdiction to issue the proposed warrant because it is a "court of

competent jurisdiction" as defined 18 U.S.C. Section 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. Section 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States government, including the USMS and local law enforcement, is investigating violations of Title 21, United States Code, Sections 841(a)(a) & 841(b)(1)(B) and Title 18, United States Code, Section 2(a) committed by CULBERT.

10. On October 21, 2025, CULBERT was indicted in the United States District Court for the Eastern District of Wisconsin, court case number 25-CR-207, for knowingly and intentionally possessing with the intent to distribute 500 grams or more of a mixture and substance containing detectable amount of cocaine, a Schedule II controlled substance.

11. Before committing the offense charged in the above listed indictment, CULBERT had a final conviction for a serious violent felony, namely, a conviction for intentional killing, aiding and abetting, in violation of Title 21, U.S.C, Section 848(e)(1)(A), on or about September 16, 1995, in case number 92-81127 in the United States District Court for the Eastern District of Michigan, for which he served more than 12 months of imprisonment.

12. In September of 2024 Inv. Casey Newtols of the Manitowoc County Sheriff's Office Metro Drug Unit was investigating Oscar Rodriguez Jr. dob: 05/25/1983 for the crime of distribution of cocaine. During this investigation, Inv. Newtols identified that Stacy L. Culbert dob: 03/26/1969 was suspected to be the drug source of supply to Rodriguez. CULBERT was identified as a potential drug source of supply by a confidential informant who named "Stacy" as an affiliate of Rodriguez for purposes of drug distribution.

13. On September 29th, 2024, Oscar Rodriguez and CULBERT were arrested by the

3

Manitowoc County Sheriff's Office Metro Drug Unit for possession with intent to deliver cocaine, 500 grams or more. CULBERT and Rodriguez were located by the Metro Drug Unit to be occupying a vehicle containing approximately 660 grams of cocaine.

14. On 09/09/2025 Inv. Newtols received a confidential laboratory report of findings from the Wisconsin Department of Justice. Within this report it was documented that CULBERT's DNA was present on two separate drug packaging items which contained quantities of cocaine that totaled approximately 660 grams. This cocaine packaging tested was the same cocaine located during the traffic stop of CULBERT/Rodriguez on 9/29/2024. CULBERT'S DNA being present on the drug packaging substantiated his involvement with possessing cocaine.

15. On 10/7/2025 Inv. Newtols obtained a company phone number for CULBERT of 832-392-7284. This phone number was obtained from a driver/vehicle examination report out of the state of Ohio based upon CULBERT's ownership of a trucking company named "Next Move Transport LLC". The date for this examination report was 8-19-2024. This examination report also showed an active address of 15001 Kercheval Ave STE 208, Grosse Pointe Park MI, 48230. Inv. Newtols obtained information that CULBERT's last inspection for his company vehicle was conducted on 6-10-2025. This information obtained was consistent with the information obtained during the investigation of CULBERT where he was identified to be the owner of a trucking company named Next Move transport LLC and owned a semi-style vehicle for his business of RC15434.

16. On 10/21/2025 CULBERT was federally indicted by the United States Eastern District of Wisconsin for his involvement with Oscar Rodriguez for the distribution of cocaine on 9/29/2024. CULBERT's indictment was supported by key DNA evidence that showed his DNA was present on drug packaging that contained quantities of cocaine. Based upon

4

CULBERT's indictment a federal warrant was issued for his arrest.

17. On 10/21/2025 and 10/28/2025 A vehicle known to be associated with CULBERT was identified to be traveling in the state of Ohio through the law enforcement database Flock. This vehicle registration plate was identified as RC15434.

18. On 11/12 and 11/14/2025 Flock also identified that CULBERT's vehicle was located in the state of Michigan with the registration plate of RC15434

19. On 11/13/2025, USMS TFO Kevin Haese with the Eastern Wisconsin Violent Offender Task Force (EWVOTF) was informed by DUSM Godlewski that CULBERT's vehicle was identified as traveling numerous times via license plate readers (LPR) on I-75 corridor between States of Ohio and Michigan. DUSM Godlewski indicated due to CULBERT's vehicle being mobile it is difficult to locate him based of the LPR's.

20. On 11/17/2025, I, USMS TFO Brandon Radke with the Eastern Wisconsin Violent Offender Task Force (EWVOTF), was requested to assist in this investigation by applying for a federal court order to Verizon Wireless for CULBERT's phone number of 832-392-7284. TFO Radke checked various law enforcement databases which show CULBERT'S phone number of 832-392-7284 to be an active wireless number with Verizon Wireless (the "Service Provider"). TFO Radke was provided information that between the dates of October 14, 2025, and November 13, 2025, CULBERT's phone had dialed the number of 832-593-3958 a total of 49 times. This phone number is identified as belonging to Lisa Simpson. Inv. Newtols stated that Simpson is the suspected girlfriend of CULBERT whom he shares a listed address within Michigan on a regular basis. USMS personnel have sat surveillance on this residence and have only observed the female coming and going from that residence.

21. Based on the above information, it is believed that CULBERT is currently

5

Case 1:25-mj-00628-TEW   Filed 11/20/25   Page 6 of 14   Document 1

utilizing cellular number 832-392-7284 and locating that cellular phone will assist in locating CULBERT. Law enforcement databases which show CULBERT's phone number of 832-392-7284 to be an active wireless number with Verizon Wireless (the "Service Provider").

22. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

23. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this

6

information for various business-related purposes.

24.  I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

25.  Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a

7

cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

26. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

27. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

28. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

29. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other

reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

ATTACHMENT A

Property to Be Searched

Records and information associated with the cellular device assigned 832-392-7284 (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) unknown that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

**I.**     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

- a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period 09/19/2025 – the current date:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b. Information associated with each communication to and from the Target Cell Phone for a period of 60 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of CULBERT's flight from justice, since October 21, 2025, including, but not limited to, information pertaining to the following matters:

(a) CULBERT's location; and

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

13